1780 BROADWAY CORPORATION, Landlord, *v.* LARRY STOUTENBURGH, Tenant, et al., Undertenant.

Municipal Court of the City of New York, Borough of Manhattan, April 10, 1946.

*Francis O. Mayer* for landlord.

*Morris Katz* for tenant.

WHALEN, J. This is a proceeding in which the landlord seeks to recover possession of business premises on the ground that the tenant is holding over after default in the payment of rent.

The parties entered into a written lease for the term of one year and six months, commencing November 1, 1943, and expiring April 30, 1945, at a rental of $2,500 per annum, payable in equal monthly payments of $208.33, in advance, on the first of each month.

Under chapter 314 of the Laws of 1945, in effect March 28, 1945, rents of business property were frozen and the maximum rental, called the "emergency rent," was fixed at 15% above the rents charged on June 1, 1944. Section 3 of said chapter 314 of the Laws of 1945, so far as material provides: "Every landlord within twenty days after the effective date of this act shall furnish each tenant with an accurate statement of the amount of his emergency rent * * * and if a landlord shall fail, refuse, or neglect to furnish any tenant with such statement within the time specified, no rent accruing shall be collectible by such landlord during the period he is in default."

Under date of April 14, 1945, the landlord, evidently in fulfillment of the quoted portion of the statute, sent a letter to the tenant, stating that the emergency rent for his premises was the sum of $239.58 per month. The lease expired, by its terms, on April 30, 1945. Thereafter the landlord continued to bill the tenant for the old rent and the tenant paid at the old rate, up until November, 1945, when the landlord, for the first time, billed the tenant for the emergency rent of $239.58. The tenant paid the emergency rent for November and December. On or about January 1, 1946, the landlord billed the tenant for rent for the month of January, and, in addition thereto, claimed rent in arrears of $187.50, being the difference between the emergency rent and the amount of rent collected from the

tenant for the months May to October, inclusive. The tenant sent in a check for the amount of the emergency rent for January, plus the electric light charges, but refused to recognize the claim for any arrears, because no claim had ever been made before for any additional sum for those months. The same process was repeated in February, and then, on March 1st, the landlord made a personal demand upon the tenant for the payment of rent for the months of January, February, and March, together with the so-called arrears. The tenant sent a check to the landlord for rent for the month of March, marked "payment in full," and returned the checks for January and February. These were again returned by the landlord, who refused to accept them with that condition. If the landlord was correct in his position of March 1st, then the tenant is in default and the landlord is entitled to a final order and judgment. If, however, the tenant was correct in its position of March 1st, and offered to pay the full amount of rent due, then the tenant is not in default and is entitled to a final order.

The enactment of chapter 314 of the Laws of 1945 did not automatically raise the rent of the tenant when his lease expired. On March 22, 1945, the landlord sent a letter to the tenant advising him that possession of the premises would be required upon the termination of the lease on April 30th. In view of that letter and the inability of the landlord to dispossess the tenant, and, further, in view of the tenant's actions in paying the increased rent when demanded, it may be inferred that both parties considered that the tenant was remaining there as a statutory tenant, similar to a monthly tenant, and that the rent could be raised, within legal limits, at the beginning of any month; however, before the rent could be raised, it would be necessary for the landlord to notify the tenant in advance that his rent was being increased to begin at a certain date in the future, to enable the tenant to decide whether he would pay the increased rent or move out. Upon acquiescence in the demand for an increased rent, the tenant agreed with the landlord's position that he was a statutory tenant.

As soon as the demand for increased rent was made, the tenant paid. The landlord now seems to assume that the letter dated April 14, 1945, was a demand for an increased rent. I do not so construe it. In my opinion, the intention and effect of this letter was to comply with the statutory requirement above referred to, that every landlord, within twenty days after March 28, 1945, was required to send a statement of the emergency rent controlling the premises occupied by that tenant.

It cannot be that the Legislature intended that sending of such a notice of the mathematical computation of the emergency rent would thereby, in itself, have the effect of increasing the rent, automatically, to the emergency rent. No demand was made on this tenant for any increase in rent until November, 1945, and it was immediately paid. The landlord cannot now relate his claim back to May 1st and claim that the emergency rent was in effect from that date. It follows that the tenant was correct in the position he assumed on March 1, 1946, and that he was not then, nor has he been at any time, in default.

A final order will, therefore, be entered, in this proceeding, dismissing the petition of the landlord, on the merits, so far as this particular proceeding is concerned, but without prejudice, of course, to the landlord's right to demand again payment of the rent for January, February, and March, 1946, in the proper amount.